161   131
d194   78

# Downey v. Pittsburg, Allegheny & Manchester Traction Co., Appellant.

*Negligence—Street railways—Grade crossing—" Stop, look and listen."*

In an action against a street railway company to recover damages for personal injuries, and for injuries inflicted upon plaintiff's horses and wagon at a public grade crossing by an electric car going at a high rate of speed, it is proper to submit the case to the jury, where the evidence tended to show that plaintiff was driving a team of spirited horses hitched to a long and heavy market wagon, that he stopped, looked and listened before going upon the tracks, and that when upon the tracks it was impossible to get the horses off before the car struck them.

Argued Nov 6, 1893.  Appeal, No. 247, Oct. T., 1893, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1892, No. 213, on verdict for plaintiff, John Downey. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.  Affirmed.

Trespass for personal injuries, and for injury to horses and wagon, by collision with electric car.  Before McCLUNG, J.

At the trial there was evidence to the effect that, on Oct. 29, 1891, plaintiff, while driving a team of horses hitched to a heavy market wagon, was injured by a collision with a trolley car, running at a high rate of speed without warning, at the intersection of Locust street and Beaver avenue in Allegheny city.  The company defendant operated a double track of electric railways on Beaver avenue.  Plaintiff testified that he stopped, looked and listened a rod or a rod and a half from the track.  "I could see a little distance up the track, but on account of the corner buildings you couldn't see very far. . . . I couldn't see no car and I couldn't hear none. . . . The horses heads were forninst the curb on Beaver avenue, and I was back the length of the horses, and I could see up the street I think far enough to get across."

Defendants' points were among others as follows :

"1. If the jury believe from the evidence that the plaintiff stopped, looked and listened before crossing the tracks of the defendant company, and his presence on the track, and the

collision with the company's car, were simultaneous, he must have seen the approaching car; and to have attempted to cross in front of the approaching car, under the circumstances, was grossly negligent on the part of the plaintiff, and he cannot recover.  *Answer:* That is refused.  As a matter of course, the presence of the plaintiff on the track simultaneously with the plaintiff's (defendant's) car was a necessity; otherwise the accident could not have occurred, and we cannot charge you that the mere occurrence of the accident shows gross negligence on the part of the plaintiff." [1]

3. Request for binding instructions.   Refused. [2]

Verdict and judgment for plaintiff for $1,080.83.

*Errors assigned* were (1, 2) above instructions, quoting them.

*A. M. Neeper*, for appellant, cited: Carson v. Ry., 147 Pa. 225; Ehrisman v. Ry., 150 Pa. 186.

*Thomas M. Marshall, Jr., Frank P. Sproul* with him, for appellee.—In the cases cited by appellant, contributory negligence was undisputed.

OPINION BY MR. JUSTICE McCOLLUM, April 16, 1894:

The sole contention of the appellant company is that the injuries to the person and property of the plaintiff were occasioned by his own negligence.   It rested its motion for a compulsory nonsuit distinctly upon this proposition, and its argument in this court was devoted exclusively to the maintenance of it. It certainly cannot successfully contend that under the evidence in the case the court should have instructed the jury to render a verdict in its favor on the ground that there was no negligence on its part, because if the plaintiff's witnesses were believed the collision was chargeable to the extraordinary speed of its car and the failure to give the usual signals in approaching the crossing. We are therefore warranted in concluding that its third point was based on the same ground as its motion for a nonsuit.

It may be conceded that if it plainly appeared in the plaintiff's evidence that he was guilty of negligence in crossing the tracks when and in the manner he did, and such negligence was responsible in any degree for the injuries for which he claims

compensation from the appellant company, this point should have been affirmed. But unless it so appeared, the presence of evidence on the part of the company showing that his negligence concurred with its own in producing the injuries, would not have justified its affirmance. In other words, when the negligent defendant sought to escape liability by showing concurring negligence on the part of the plaintiff it raised a question which involved the credibility of its witnesses, and was necessarily for the consideration and decision of the jury.

The plaintiff testified that before crossing the tracks he stopped, looked and listened, and that he could not see a car on either of them, nor hear anything to indicate the approach of one from either direction; that he then started to drive across the tracks and while he was in the act of crossing them he saw a car coming on the down track. Referring to his position when he first saw the car, he said: " I couldn't go back. I had to go forward; my horses were under headway at a good rate of speed and I would have had to stop them and back and turn around. I would have lost more time and it certainly would have killed the horses or killed me and the horses both, because it would have hit the horses or. hit in about the double-tree. I didn't think they were going really so fast as they were." John Mangan and James Hamilton were riding with him, and his testimony descriptive of what he did before he attempted to cross the tracks, and of his position when he first saw the car, was fully corroborated by them. In view of his position when he discovered the car and of the fact that he was driving a team of spirited horses hitched to a long and heavy market wagon, it is by no means certain that he could have adopted a better method than he did of extricating himself from the peril in which he appears to have been placed without fault of his own; at all events it was not for the court to say that the efforts he made to avoid the danger to which he was exposed constituted contributory negligence.

But the appellant company contends that the plaintiff did not stop in the right place to look and listen before he attempted to cross the tracks. It is proper to say in connection with this particular contention, and we think it is a sufficient answer to it, that there was no evidence tending to show there was any place where he could have obtained a better view of the tracks,

without driving upon them.   Carson v. Railway Co., 147 Pa. 219, and Ehrisman v. Railway Co., 150 Pa. 180, are plainly distinguishable in their facts from this case.   Carson did not look to see whether a car was approaching before he drove on the tracks, and Ehrisman was driving along the street on which the railway was located and in the same direction the car was running; he looked and listened at a point about sixty feet from the place where he turned to cross the tracks obliquely, and while he was crossing them in that manner the collision occurred.

We think this case was fairly and correctly tried in the court below, and we therefore overrule the specifications of error and sustain the judgment entered there.

Judgment affirmed.